IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-51071
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FRANCISCO CANO-GUEL,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

February 12, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS Circuit Judges.

BENAVIDES, Circuit Judge:

Francisco Cano-Guel ("Cano-Guel") appeals from his criminal conviction and sentence for importation of and possession with intent to distribute marijuana.  Cano-Guel contends that the evidence was insufficient to support his two count conviction, that the district court committed plain error in failing to define "knowingly" in its jury charge, and that the district court erred in refusing to reduce his offense level for acceptance of responsibility.  For the reasons set forth below, we AFFIRM both Cano-Guel's conviction and sentence.

I.  Background

A.

On June 21, 1997, Cano-Guel was arrested at the El Paso, Texas, Port of Entry after U.S. Customs agents discovered marijuana concealed in the Buick he was driving into the United States. Following his arrest, a two count indictment issued charging Cano-Guel with importation of marijuana (Count One) and possession of marijuana with intent to distribute (Count Two). He entered into a plea agreement with the Government. In exchange for his plea of guilty to Count One, the Government agreed (1) to move for dismissal of Count Two and (2) to not oppose a three-level reduction in offense level for acceptance of responsibility. At the October 16 rearraignment hearing, however, the district court refused to accept Cano-Guel's plea of guilty and, instead, set his case for trial on October 20, 1997.

Following a two day trial, the jury found Cano-Guel guilty on both counts. On December 9, 1997, the district court sentenced him to concurrent 21-month terms of imprisonment.

B.

At approximately 9:00 a.m., on Saturday, June 21, 1997, Cano-Guel entered the United States from the Republic of Mexico through the Bridge of Americas Port of Entry in El Paso, Texas. He was the driver and sole occupant of a 1985 Buick Century, bearing Mexican registration. At primary inspection, he showed Customs Inspector Auden Ramos his resident alien card. In

response to questioning, Cano-Guel stated that he had nothing to declare and that he was going to El Paso "to buy groceries" or "to buy a few things."[1] He also told Inspector Ramos that the car belonged to a friend. Cano-Guel did not appear to be nervous and the car did not smell of contraband. Inspector Ramos, however, referred Cano-Guel to secondary inspection because he noticed that the glove compartment did not contain registration or insurance papers, that the key ring held only one key besides the ignition key, and that the car contained no personal belongings or trash.

At secondary inspection, Cano-Guel told Customs Inspector Thomas Klukas that he had borrowed the Buick from his mechanic because his own car was not running well. A canine alerted to the presence of marijuana and officers discovered bundles of the drug hidden inside the dashboard as well as the rear doors. Approximately 59.7 pounds of marijuana were recovered from the Buick. The marijuana could not be seen by a person sitting in the car and the customs inspectors testified that they could not smell the drug until after the packages of marijuana were opened.

Inspector Klukas escorted Cano-Guel to the head house where he was frisked for weapons and contraband. Customs Special Agent John Alpers interviewed Cano-Guel after advising him of his

---

[1]The exchange between Cano-Guel and Ramos took place in Spanish.

Miranda rights.[2]  Cano-Guel told Agent Alpers that he had been going to El Paso to see a doctor.  Cano-Guel initially could not remember the doctor's name.  After some thought, he recalled that it was "Dr. Negrete."  Cano-Guel told Alpers that Dr. Negrete's office was on Mesa Street near the hospital but that he did not know the precise address.  He said that Dr. Negrete had performed hernia surgery on him four years earlier and had told him to return if he became ill.  Cano-Guel admitted that he did not have an appointment with Dr. Negrete, but said that he was on his way to the doctor's office to make an appointment.  Agent Alpers commented that Cano-Guel's report about his visit to the doctor did not seem truthful to which Cano-Guel responded that he was a Christian and did not lie.  Cano-Guel told Agent Alpers that the Buick belonged to his friend Javier, whom he had known since Javier was a child, and that he had picked up the car that morning from Javier's garage.  Cano-Guel, however, did not know Javier's last name.  Cano-Guel also told Alpers that he did not currently own a car.

Cano-Guel later testified at trial that he lived in Juarez where he cared for his elderly father.  Cano-Guel explained that Javier, the person who loaned him the car, was about 30 years old and that Cano-Guel had met him about 15 years earlier when Cano-

_____

[2] The interview was conducted in Spanish.  Agent Alpers testified that his Spanish is "fairly good" and that he was assisted by interpreter Carlos Macias.

4

Guel was coaching a football team.  According to Cano-Guel, Javier owns a mechanic's shop in Juarez.  Cano-Guel testified that he did not know Javier's last name or the location of his shop.

Cano-Guel additionally testified that, on the day of his arrest, he was in great pain from his hernia.  He went to his brother Jesus' house to borrow Jesus' truck so that he might go to El Paso and make an appointment with Dr. Negrete.[3]  Cano-Guel could not borrow Jesus' truck because it was not running well.[4] According to Cano-Guel, he sat down on the sidewalk, dejected because he was in too much pain to walk to the bus stop in order to take a bus to El Paso.  While sitting there, Javier drove up. When he learned of Cano-Guel's problem, Javier offered to loan him a car and told Cano-Guel to wait.  Javier returned about 25 minutes later driving the Buick.  Cano-Guel explained that Javier, himself, could not take Cano-Guel to Dr. Negrete's office because Javier did not have a crossing card.  Cano-Guel denied knowing that the Buick contained marijuana, but did admit that the car had a strange odor as if "it was coming from the outdoors, from the land, from agriculture."

---

[3]Cano-Guel testified that he has had recurring hernia problems and that Dr. Negrete operated on him three times in 1992.

[4]Cano-Guel's brother and sister-in-law also testified that he had tried to borrow their truck to go to the doctor on the day of his arrest, but that they had refused because the truck had mechanical problems.

5

On cross-examination, Cano-Guel agreed that he had told Inspector Ramos that he was coming to the United States to go shopping. He also agreed that he had told Inspector Klukas that the Buick belonged to a mechanic in Juarez and that Cano-Guel had left his vehicle with a mechanic because it was not running well. He insisted, however, that he had not intended to convey to Inspector Klukas that he had left his own vehicle with the person who loaned him the Buick. Cano-Guel explained that he had told Inspector Klukas that his car was at a mechanic's because he and his siblings considered their possessions common property and because his sister-in-law had told him that his brother's truck was going to be taken to the mechanic that day. Cano-Guel admitted that he had not seen a doctor about his hernia until the Friday before trial. He additionally told the court that he did not think that anyone had followed the Buick and that he had no idea how the owners of the marijuana planned to remove it from the Buick once it crossed into the United States.

## II. DISCUSSION

### A.

Cano-Guel argues that the evidence is insufficient to support his conviction because it fails to establish that he knew that marijuana was hidden in the Buick, an element necessary to prove both the importation and the possession charges.

The narrow scope of review for sufficiency of the evidence

6

following a conviction is well established.  We have explained that, in evaluating the sufficiency of the evidence on appeal, the reviewing court must consider the evidence in the light most favorable to the Government, drawing all reasonable inferences in support of the jury's verdict.  See United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996).  The evidence is sufficient if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); United States v. Gaytan, 74 F.3d 545, 555 (5th Cir. 1996).  The evidence need not exclude every reasonable hypothesis of innocence, and the jury is free to choose among reasonable constructions of the evidence. See Lopez, 74 F.3d at 577.  That being said, we have cautioned that if the evidence gives "equal or nearly equal circumstantial support" to a theory of guilt and a theory of innocence, reversal is required.  United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir. 1992).

A conviction for the offense of possession of marijuana with intent to distribute requires proof that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it.  See Lopez, 42 F.3d at 577.  Importation of marijuana, in contrast, requires proof that:  (1) the defendant played a role in bringing a quantity of marijuana into the United States from a place outside the United States; (2) the defendant

7

knew the substance was marijuana; and (3) the defendant knew the substance would enter the United States. See United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994). To establish either crime, "the government must adduce sufficient evidence of guilty knowledge." Lopez, 74 F.3d at 577; see also United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990).

It is rare that direct evidence is available to prove the knowledge element for possession or importation of drugs. See Lopez, 74 F.3d at 577; United States v. Garza, 990 F.2d 171, 174 (5th Cir. 1993). Although knowledge may sometimes be inferred solely from control of a vehicle containing drugs, when the drugs are secreted in hidden compartments, as in the present case, the Government must produce additional "circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir.1995). This requirement stems from the recognition that, in hidden compartment cases, there "is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." Diaz-Carreon, 915 F.2d at 954. In the present case, the Government points to Cano-Guel's conflicting statements to customs officials and his implausible story as circumstantial proof of his guilty knowledge.

According to the Government, Cano-Guel made several

8

conflicting statements to customs officials at the El Paso port of entry. The conflicting statements included (1) telling Inspector Ramos that he was going to the United States to buy "groceries" or a few things" and telling Agent Alpers that he was going to the doctor, (2) stating that the Buick belonged to a friend and later claiming that it belonged to his mechanic, (3) telling Inspector Klukas that his car was in the shop and revealing to other agents that he did not own a car, (4) informing Agent Alpers that he had picked up the Buick at Javier's garage and testifying at trial that Javier drove the car to him.

Moreover, the Government asserts that Cano-Guel provided customs officials an implausible explanation of his motive for traveling into the United States. Cano-Guel claimed that he was in a great deal of pain and entered the United States so that he might see Dr. Negrete. Yet, testimony at trial revealed that Cano-Guel never complained of being ill, either at the checkpoint or while being processed in the County Detention Facility. In fact, Cano-Guel admitted that he had not seen a doctor concerning his hernia until the Friday before trial--some four months after the date he attempted to enter the country.

In addition to the implausible explanation of Cano-Guel's motive to travel argued by the Government, we find equally implausible Cano-Guel's account of how he came to possess the

9

Buick.  At trial, Cano-Guel testified that when he failed to borrow his brother's truck, he sat on the sidewalk in despair until Javier, his mechanic-friend, came by and offered to loan him a car.  According to Cano-Guel, he had known Javier for fifteen years yet knew neither his last name nor the location of his mechanic's shop.

On the basis of these implausible stories and the apparent inconsistencies in statements made by Cano-Guel to customs agents, we find the evidence sufficient to support an inference by the jury that Cano-Guel knew that the Buick contained marijuana.  Although we are mindful that "[n]o single piece of circumstantial evidence need be conclusive when considered in isolation," United States v. Miller, 146 F.3d 274, 281 (5th Circ. 1998), we recognize that inconsistent statements and implausible explanations are types of behavior that can reasonably be relied upon as circumstantial evidence of guilty knowledge.  See Diaz-Carreon, 915 F.2d at 955 (discussing inconsistent statements of appellant); Casilla, 20 F.3d at 606 (noting implausible explanation of events offered by appellant).  The jury thus drew reasonable and rational inferences from the facts in this case and returned a verdict of guilty.  We see no reason to disturb that determination.

### B.

Cano-Guel also argues that the district court erred by

10

failing to include a definition of the term "knowingly" in its instruction to the jury. In particular, he complains that the jury was not instructed that his exercise of control over the Buick, in and of itself, was inadequate to establish that he knowingly possessed the hidden drugs. Because Cano-Guel did not ask the district court for such an instruction, we review the district court's charge to the jury for plain error. See United States v. Mitchell, 31 F.3d 271, 276 (5th Cir. 1994).

Under the plain error standard, an appellant must show: (1) that there was error; (2) that it was clear and obvious; and (3) that it affected the appellant's substantial rights. See United States v. Dupre, 117 F.3d 810, 817 (5th Cir. 1997), cert. denied, --- U.S. ---, 118 S.Ct. 857 (1998); see also United States v. Olano, 507 U.S. 725, 730-36, 113 S.Ct. 1770, 1775-79 (1993) (requiring defendant, in most cases, to make a specific showing of prejudice to satisfy the substantial rights prong). Even when these criteria are satisfied, a court should exercise its discretion to reverse only if the forfeited error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olanu, 507 U.S. at 732, 113 S.Ct. at 1777.

We have held that the term "knowingly" is given its common meaning in the statutes prohibiting the possession of controlled substances and that no further jury instruction is required if the jury is correctly instructed as to the substantive offenses.

11

See United States v. Sanchez-Soleto, 8 F.3d 202, 212 (5th Cir. 1993). Here, the district court's charge to the jury tracked the Fifth Circuit pattern jury instruction on actual and constructive possession. See Fifth Circuit Pattern Jury Instruction 1.31 (Criminal Cases) (1990). Moreover, the district court instructed the jury on the elements of the two charged offenses. Accordingly, we hold that the district court did not commit error, plain or otherwise, in its instruction to the jury.

C.

Cano-Guel further argues that the district court erred by failing (1) to accept his guilty plea, which he characterizes as an Alford[5] or nolo contendere plea, and (2) to grant him a three-level downward departure for acceptance of responsibility. Cano-Guel incorrectly characterizes his proffered plea. Neither the written plea agreement nor the transcript of the rearraignment hearing suggests that Cano-Guel and the Government negotiated an Alford or a nolo plea.

A district court may not accept a guilty plea unless it is supported by a sufficient factual basis. See United States v. Carter, 117 F.3d 262, 264 (5th Cir. 1997); see also F.R.Crim P. 11(f). The facts supporting the plea must "appear in the record and must be sufficiently specific to allow the court to determine if the defendant's conduct was within the ambit of that defined

---

[5] North Carolina v. Alford, 400 U.S. 25, 37 (1970).

as criminal." Carter, 117 F.3d at 264.  We review for clear error the district court's decision whether to accept a plea. Id.

Knowledge is an element of both the importation and possession offenses.  See Casilla, 20 F.3d at 603.  Because Cano-Guel insisted that he did not know that the Buick contained marijuana, the district court did not clearly err by determining that his guilt or innocence should be determined by a jury.

Furthermore, Cano-Guel's contention that he would be entitled to a mandatory downward departure for acceptance of responsibility had Judge Hudspeth accepted his Alford plea lacks merit.[6]  The entering of a plea (even an unequivocal guilty plea) does not automatically constitute acceptance of responsibility. See U.S. Sentencing Guidelines Manual § 3E1.1 application note 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."); United States v. Harlan, 35 F.3d 176, 181 (5th Cir. 1994) (discussing acceptance of responsibility departure in context of Alford plea).  A defendant must affirmatively demonstrate to the district court that he is entitled to the downward departure. Because trial courts are in a "unique position to evaluate whether the defendant has demonstrated acceptance of

---

[6]Under the sentencing guidelines, a district court may decrease a defendant's offense level if it finds that "the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S. Sentencing Guidelines Manual § 3E1.1.

13

responsibility," <u>Frank v. Blackburn</u>, 646 F.2d 873, 885 (5th Cir. 1980), a district court's finding on acceptance of responsibility is examined "for clear error but under a standard of review even more deferential than a pure 'clearly erroneous' standard." <u>United States v. Gonzales</u>, 19 F.3d 982, 983 (5th Cir. 1994) (internal citation and quotation omitted).

Here, the district court denied the reduction for acceptance of responsibility with the comment that Cano-Guel's report of smelling an odor in the car was "very watered down" in his testimony before the jury and that it had no doubt that Cano-Guel "was simply employed for a fee to cross the marijuana."  Because "[a] defendant's refusal to acknowledge essential elements of an offense is incongruous with the guideline's commentary that truthful admission of the conduct comprising an offense is relevant in determining whether a defendant qualifies [for a reduction for acceptance of responsibility]," <u>Harlan</u>, 35 F.3d at 181, Cano-Guel has failed to show that the district court erred in its determination not to grant a § 3E1.1 departure.

CONCLUSION

Cano-Guel raises three issues on appeal none of which warrant reversal.  We, therefore, affirm both Cano-Guel's conviction and sentence.

AFFIRMED.

14