IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————————

No. 01-51029

———————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIA ERNESTINA LEYVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. EP-01-CR-247-ALL-DB
_____

August 13, 2002

Before JOLLY, DUHÉ, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In January 2001, Maria Leyva's truck was stopped by customs agents at the United States port of entry in El Paso, Texas because a drug-detecting dog alerted to the tires on the truck. After a further search, the agents found 96.9 pounds of marijuana concealed in four metal containers wrapped around the wheel rims inside the truck's tires. A jury ultimately found Leyva guilty of various offenses in connection with the importation of the marijuana into the United States. On appeal, Leyva argues that the government did

———————————————

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

not produce sufficient evidence at trial to support the jury's verdict on any of the charges against her. We disagree and affirm the district court's judgment.

I

In view of the fact-intensive nature of an inquiry into the sufficiency of the evidence, we summarize briefly the events leading up to the discovery of the marijuana in Leyva's truck tires. According to her out-of-court statements[1] and the testimony of her daughter, Leyva lived in Mesquite, New Mexico and had been employed at a local hospital for eleven years. Late in the afternoon of January 23, 2001, Leyva's then-boyfriend, Miguel Sanchez, proposed a trip across the border to Juarez, Mexico to purchase vitamin shots at a pharmacy. At about 5:00 p.m., Leyva, Sanchez, and the daughter, Liliana, left Mesquite in Leyva's 1993 GMC pick-up truck.[2] After arriving in Juarez, the three went to a pharmacy to order the vitamin shots for Sanchez.[3] The pharmacist asked them to return later that evening because the store did not

---

[1] Leyva did not testify at trial.

[2] The truck was registered and titled to Leyva. According to the truck's registration produced by Leyva, she purchased the truck on January 9, 2001. The bill of sale indicated that Paul Petrino, a used car dealer in Albuquerque, had sold Leyva the truck. Petrino's records, however, indicated that he sold the truck to Luis Sanchez on January 9, 2001. Petrino also testified at trial that he did not know Leyva and that his signature on Leyva's bill of sale had been forged.

[3] They parked the truck in a public lot in Juarez. According to Liliana, two men were washing cars in the lot.

have any vitamin shots in stock.

While they waited, Leyva, Sanchez, and Liliana went to a nearby restaurant for dinner. Before sitting down at their table, Sanchez took the couple's mobile phone and the keys to the truck and told Leyva that he was going to the restroom. Sanchez did not return to the table until approximately one hour later.[4] The three left the restaurant shortly thereafter.

Following a brief stop at the pharmacy, Leyva, Sanchez, and Liliana began their trip back to New Mexico. At the United States border, however, a drug-detecting dog alerted to Leyva's truck. The customs agent accompanying the dog instructed Leyva, who was driving, to stop the truck. Although Leyva saw the agent, she did not stop the truck until the agent instructed her to stop a second time. When the dog scratched at the truck's tires, Leyva began to drive forward. The customs agent again instructed Leyva to stop the truck and to turn off the ignition. The agent then questioned Leyva concerning her citizenship and the purpose of her trip. Leyva presented her resident alien card and responded that, while in Juarez, she ate dinner and had the truck washed. The agent testified that Leyva "was visibly nervous" during the interview and only made eye contact with the agent when she answered his questions. The agent also testified that Leyva "got real nervous,

---

[4] According to Liliana, Leyva was angry that Sanchez had left for such a long time but did not say anything to him when he returned.

3

and her eyes got big and glossy" as the drug-detecting dog walked around the car.[5]   According to the agent, Leyva then turned to Sanchez and asked: "'Honey, didn't they do any work to the tires, too?'"

At that point, the agent asked Leyva, Sanchez, and Liliana to wait while customs agents moved the truck to an inspection area. According to Inspector Porras, who drove the truck into the inspection area, the "truck was very wobbly, and the steering was very unsteady."[6]   Inspector Porras also noted that the tires "had a real hard feeling" when he drove the truck over speed bumps.

Based on the drug-detecting dog's behavior, the inspectors removed one of the tires for further examination.   The inspectors noted that the tire was abnormally heavy and, using a mobile X-ray machine, observed a "large cylindrical masses inside the tire." The inspectors disassembled the tire and discovered a metal container wrapped around the wheel rim.   Inside the container, the inspectors found bundles of marijuana.   The inspectors discovered similar containers in the truck's other three tires.

The government charged Leyva with one count of importation of 96.9 pounds of marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1), one count of conspiracy to import marijuana in violation

---

[5] Another agent similarly observed Leva "beg[i]n to physically tremble" while she was questioned.

[6] In his report, however, Inspector Porras indicated that he noticed the wobbly steering only after the agents had cut open the tire.

4

of 21 U.S.C. § 963, one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846.

At trial, Leyva moved for a judgment of acquittal on all charges at the close of the government's case and at the close of all of the evidence. The district court denied both motions, and the jury returned a verdict of guilty on all charges. The district court sentenced Leyva to four concurrent terms of twenty-seven months in prison, followed by four concurrent three-year terms of supervised release.

## II

In this appeal, Leyva challenges the sufficiency of the government's evidence against her on each of the four charges in the indictment. We review de novo the district court's denial of a judgment of acquittal under the same standard applied by the district court: Viewing the evidence in the light most favorable to the government, we must determine whether a rational jury could find that the government established the essential elements of each offense beyond a reasonable doubt. See United States v. Gourley, 168 F.3d 165, 168-69 (5th Cir. 1999); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

To establish that Leyva unlawfully imported marijuana into the United States, the government must prove beyond a reasonable doubt that she (1) "played a role" in bringing the marijuana into the

5

United States from Mexico, (2) knew that marijuana is a controlled substance, and (3) knew that the marijuana would enter the United States. United States v. Medina, 161 F.3d 867, 873 (5th Cir. 1998). In contrast, to establish possession with intent to distribute, the government must prove beyond a reasonable doubt that Leyva (1) knowingly (2) possessed marijuana (3) with an intent to distribute it. See United States v. Ortega Reyna, 148 F.3d 540, 543-44 (5th Cir. 1998) (per curiam). In the instant case, the only question is whether the government presented sufficient evidence to prove that Leyva knew that the ninety-six pounds of marijuana was concealed in the tires of her truck.[7] Cf. United States v. Cano-Guel, 167 F.3d 900, 904 (5th Cir. 1999) ("To establish [importation or possession with intent to distribute marijuana], 'the government must adduce sufficient evidence of guilty knowledge.'" (citation omitted)).

Because the marijuana at issue in this case was found in a hidden compartment in Leyva's truck, the government may not simply rely on Leyva's possession or constructive possession of the vehicle to demonstrate her guilty knowledge. See id. Instead, the government must present additional circumstantial evidence indicating that Leyva was actually aware of the illegal drugs in the vehicle and was not merely an unwitting participant in a smuggling operation. See id.

---

[7] Leyva challenges the two associated conspiracy charges on the same basis.

6

The government argues that, in addition to the fact that Leyva owned and was driving the truck in which the marijuana was found, the jury could reasonably infer that Leyva knew that marijuana was concealed in the truck's tires based on (1) her visible nervousness during the stop, (2) her failure to stop the truck at the customs agent's request, (3) evidence that the modified tires caused the truck's steering to become unsteady, and (4) evidence that the title to the truck had been forged. Leyva responds that the evidence also supports her contention that Sanchez changed the tires on the truck, without her knowledge or permission, when he left Leyva and Liliana at the restaurant in Juarez. She therefore argues that she is entitled to a judgment of acquittal because the evidence for and against her is in equipoise.[8]

After carefully reviewing the record, we must conclude that the government presented sufficient evidence to allow a reasonable jury to find beyond a reasonable doubt that Leyva was aware of the marijuana concealed in the truck tires. As the government observes, the testimony at trial indicated that Leyva was not only extremely nervous when questioned by customs agents, but she also refused to stop the truck on two occasions in an apparent attempt

---

[8] See United States v. Cavin, 39 F.3d 1299, 1305 (5th Cir. 1994) ("[I]f the evidence gives equal or nearly equal circumstantial support to a finding of guilty and a finding of not guilty, reversal [of the conviction] is in order.").

7

to avoid investigation.[9]  Perhaps more tellingly, the customs agent testified that, as the drug-detecting dog began to scratch at the truck's tires, Leyva asked Sanchez whether "they [did] any work to the tires, too."[10]  This self-serving question supports an inference that Leyva was aware that the truck's tires had been altered.

In addition, the government presented evidence that the modified wheels perceptibly affected the handling of the truck. Specifically, the government's expert witness testified that the modified wheels would likely cause the steering wheel to shake, and Inspector Porras testified that the truck's steering was, in fact, impaired even at low speeds.  During the investigation at the border, however, Leyva told the customs agents that the truck drove smoothly.  Based on this evidence, the jury could reasonably infer that Leyva was aware of modifications to the tires and attempted to hide the modifications from customs officials.[11]

---

[9] We have held that unusual nervousness during questioning is evidence that the defendant was aware of the presence of concealed drugs.  See, e.g., United States v. Crooks, 83 F.3d 103, 107 (5th Cir. 1996); United States v. Casilla, 20 F.3d 600, 607 (5th Cir. 1994).  Leyva's failure to make eye contact during questioning is also some evidence of guilty knowledge.  See United States v. Price, 869 F.2d 801, 803 (5th Cir. 1989).

[10] Although Liliana testified that Leyva asked Sanchez "'What's going on with the tires, babe?'" the jury was free to believe the customs agent's account of Leyva's statement.  See United States v. Kelley, 140 F.3d 596, 607 (5th Cir. 1998).

[11] As noted above, Leyva attempted to undermine the credibility of the agent's testimony and presented expert testimony that it would be possible to balance the modified truck wheels.  Liliana also testified that Leyva drove the truck under twenty-five miles per hour between the parking lot and the border.  Nevertheless,

Finally, the jury was perfectly free to reject the explanation and account of the events as presented by Liliana. We cannot sweep away the fact that the jury observed her demeanor and was in the best position to make credibility choices and to draw inferences from the circumstantial evidence in this disputed case. Thus, viewing the record as a whole in the light most favorable to the government, we conclude that the government presented sufficient evidence to support the jury's verdict of guilty on all charges. The judgment of the district court is therefore

AFFIRMED.

the jury was free to reject this evidence and to accept the testimony of the customs agent and the government's expert witness.