United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 1, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-41438
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAVIER ADOLFO ROEL,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
Docket No. 2:05-CR-288

Before JONES, Chief Judge, and KING and DAVIS, Circuit Judges.

PER CURIAM:[*]

Javier Adolfo Roel appeals his conviction for possession of cocaine with intent to distribute. Finding that there was sufficient evidence to support the conviction, we AFFIRM.

## I. Background

On April 19, 2005, Roel was stopped at a Border Patrol checkpoint in Sarita, TX. At the checkpoint, one Border Patrol agent noted that Roel's demeanor was abnormally conversational; when another agent approached Roel's car with a canine unit, Roel's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

demeanor changed, and he began watching the dog from his rearview mirror. The dog alerted to the presence of drugs or people concealed in the front of Roel's car, and Roel was instructed to park in the secondary inspection area, a task he had difficulty doing.

Roel eventually got out of his car, and the dog again alerted. The two Border Patrol agents examined Roel's car, and noticed abnormalities in the front fender area, portions of which appeared to have been recently removed. The agents also noticed fresh paint and that a piece of sheet metal had been affixed to the car's cowling using Bondo. After chiseling into the sheet metal and opening a secret compartment in the car, the agents discovered 4.491 kilograms of cocaine, worth approximately $400,000, concealed behind a layer of fresh foam insulation. The cocaine was, in short, elaborately hidden.

Following his arrest, Roel was interviewed by the DEA. He told the DEA agent that he was in the business of buying cars in the Houston area for sale in Mexico. The way in which this business allegedly operated was unconventional at best: Roel stated that his buyer in Mexico, Manuel Sol, would send drivers to Houston to take selected cars to Mexico. Roel would follow the drivers in his car, and deliver the vehicles' paperwork to Sol in Reynosa, across the Mexican border. Roel would then return to Houston and wait for a call from Sol, who was responsible for taking the cars from Reynosa to Monterrey and selling them. Once the cars had been

2

sold, Roel would drive from Houston to Monterrey, where he would receive his share of the proceeds. The DEA agent asked Roel why, in an era of Federal Express and wire transfers, Roel felt the need to make frequent drives from Houston, as such trips entailed substantial fuel, food, and lodging costs, to say nothing of the six hour travel time in each direction. Roel claimed that his buyer did not wish to pay wire transfer fees, and that in any event, he liked traveling and being away from home.

As to the chain of events surrounding his arrest, Roel stated that he had followed cars to Mexico on April 18, but had forgotten the paperwork for one of them, and that he had to return to Houston, where he spent the night.[1] He returned to Mexico the next day and delivered the paperwork to Sol. He stated that he had driven his car[2] to Mexico, and that he had told Sol of his plan to change its oil and have it washed before returning to Houston. One of Sol's associates, unknown to Roel, washed the car while the two men ate lunch. The car was gone for roughly three hours. When it was returned to him, Roel claimed, he noticed the presence of fresh scuff marks and an odor of paint thinner. In spite of these

---

[1] The fact that Roel had been issued a traffic citation in the early morning hours of April 17 heading north to Houston contradicted his timeline; Roel stated that he must have been mistaken as to certain dates when confronted with the citation.

[2] In another inconsistency, when confronted with another receipt, Roel told investigators that he kept a car in Mexico, solely so that he would not have to drive his primary vehicle, a recently purchased Dodge Neon, across the border. He nevertheless drove the Neon across the border, as he had done at least three other times since December 30, 2004, to meet with Sol.

changes, he said nothing, and began his drive back to Texas, where he was ultimately stopped and arrested. At trial, Roel essentially reiterated his story, and was convicted.

## II. Discussion

Roel challenges the sufficiency of the evidence used to convict him. We review the evidence in the light most favorable to the jury's verdict. United States v. Jones, 185 F.3d 459, 463 (5th Cir. 1999). This court will only uphold a verdict if "there is substantial evidence from which a rational trier of fact would have to find all the essential elements of the offense beyond a reasonable doubt." United States v. Alarcon, 261 F.3d 416, 422-23 (5th Cir. 2001). In the instant case, to convict Roel, the Government had to prove beyond a reasonable doubt that Roel (1) knowingly (2) possessed cocaine (3) with intent to distribute. Id. Roel challenges only the knowledge requirement.

Generally, a jury may infer knowledge from the defendant's control of a vehicle containing drugs; where, as here, the drugs are hidden in a secret compartment, proof of the defendant's knowledge depends upon inference and additional circumstantial evidence. Id. This additional requirement exists because, in hidden compartment cases, there "is at least a fair assumption" that a third party may be using the defendant as an unwitting carrier. United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990). Among the types of behavior that this court

4

has previously recognized as circumstantial evidence of guilty knowledge are:

> (1) nervousness; (2) absence of nervousness, i.e., a cool and calm demeanor; (3) failure to make eye contact; (4) refusal or reluctance to answer questions; (5) lack of surprise when contraband is discovered; (6) inconsistent statements; (7) implausible explanations; (8) possession of large amounts of cash; and (9) obvious or remarkable alterations to the vehicle, especially when the defendant had been in possession of the vehicle for a substantial period of time.

United States v. Ortega Reyna, 148 F.3d 540, 544 (5th Cir. 1998)(internal citations omitted).

Roel is correct that his demeanor during the search of his car, both his excessive friendliness and his nervousness at the sight of a drug-sniffing dog, cannot determine the sufficiency of the Government's case. See id. at 545. However, he errs in implying that all evidence relating to nervousness or lack thereof is equivocal and therefore worthless. Although evidence of nervousness "alone is insufficient, it may support an inference of guilty knowledge when combined with facts suggesting that the nervousness is derived from an underlying consciousness of criminal behavior." Jones, 185 F.3d at 464. By way of comparison, the defendant in Ortega Reyna, a case relied upon by Roel, was unusually calm throughout the search of his car; the court concluded that such behavior could have been equally indicative of

5

guilt or innocence.[3]  Roel, on the other hand, initially seemed abnormally friendly, and then his demeanor changed noticeably upon the introduction of a drug-sniffing dog.  A reasonable jury did not have to regard such evidence as equivocal, and could have inferred Roel's guilty knowledge because of his sudden change in demeanor.

Other sources of evidence reinforced an inference of knowledge on the part of Roel.  Notably, Roel's unorthodox business methods and his frequent, seemingly wasteful trips to Mexico could be regarded as implausible by the jury.  See United States v. Anchondo-Sandoval, 910 F.2d 1234, 1237 (5th Cir. 1990).

Most important, however, there are Roel's car and the cocaine itself.  Again, to compare, Ortega Reyna concerned drugs hidden in a "loaner" automobile that had only been in the defendant's possession for a short period of time.  As the court noted, it was unlikely that the defendant would "examine the teeth of his gift horse" and notice abnormalities.  Ortega Reyna, 148 F.3d at 547.  However, a defendant could reasonably be expected to notice visible damage to his personal vehicle, and indeed, Roel claimed that after his car returned from its suspiciously long

_____

[3]      Further, as the court noted in Ortega Reyna, a defendant's seemingly odd behavior must be put into context by looking to his perspective.  Ortega Reyna, 148 F.3d at 545.  The defendant in Ortega Reyna was an "illiterate, poverty-level" worker of odd jobs with no demonstrated understanding of the English language.  Id.  In contrast, Roel had resided in the United States for nearly twenty years at the time of his arrest, spoke English, and had a steady history of employment; he also had driven the route from Houston to Reynosa on multiple occasions.  Thus, Roel had no obvious reason to behave oddly in the presence of Border Patrol.

6

"wash," it had fresh scuff marks and smelled of paint thinner. Despite claiming to be upset about the damage, Roel testified that he did nothing, and proceeded to Houston. A jury did not have to regard such testimony as credible. Finally, $400,000 worth of cocaine was found in Roel's vehicle. The value of the drugs located may be probative of knowledge, as a jury may infer that drug smugglers would not entrust substantial amounts of drugs to an unwitting stranger. United States v. Villareal, 324 F.3d 319, 324 (5th Cir. 2003); United States v. Gamez-Gonzalez, 319 F.3d 695, 699 (5th Cir. 2003). Roel testified that he was a victim of a set-up and that smugglers known by Sol had placed the cocaine in his car. Again, a reasonable jury could have found this explanation incredible, and instead inferred Roel's knowledge from the large quantity of cocaine in his possession.

## III. Conclusion

A rational jury could have found beyond a reasonable doubt that Roel had knowledge of the cocaine in his car. Therefore, Roel's conviction is **AFFIRMED**.