United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
for the Fifth Circuit**

No. 05-50951

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DANIEL P. SALAZAR,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

(4:05-CR-54)

Before GARZA, DeMOSS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Defendant Daniel P. Salazar ("Salazar") was charged in a two-count indictment with knowingly importing less than fifty kilograms of marijuana in violation of 21

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. §§ 952 and 960 and knowingly possessing less than fifty kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury convicted Salazar on both counts. He was sentenced to thirty months' imprisonment on each count, to run concurrently, and three years' supervised release. He appeals his conviction and sentence, arguing that (1) the criminal proceeding was void because the grand jury foreperson did not sign the indictment; (2) the evidence was insufficient to establish the requisite knowledge that he was importing or possessing drugs; and (3) he was entitled to a partial acquittal regarding the drugs found inside two ice chests. For the following reasons, we affirm Salazar's conviction and sentence.

## I.

On February 17, 2005, a U.S. Customs and Border Protection agent stopped a Dodge van towing a trailer that was attempting to enter the United States via the Presidio, Texas port of entry. The agent recognized the man in the passenger seat of the van as Daniel Salazar, a commercial carrier of people and goods who had

2

previously attempted to import goods for third parties without properly declaring them. The agent directed the van to a secondary lane for a routine examination; a search of the van and trailer, which both belonged to Salazar, ensued. Salazar does not contest the legality of the search.

The search of the trailer revealed a large decorative wagon wheel with oddly shaped spokes that was wrapped in what the agent later described as "excessive" packaging. The agent asked Salazar to whom the wheel belonged, and Salazar responded that it was his; however, when the agent asked if he could drill a hole in the wheel, Salazar began "fidgeting" and then changed his story and said the wheel belonged to a friend. Another agent described Salazar as "hesitant," but not "nervous" or "agitated." Marijuana was discovered inside the hollow spokes of the wheel. Marijuana was also discovered in the lining of two ice chests stowed in the van. Salazar never claimed ownership of the two ice chests. Salazar stipulated at trial that the marijuana found in the wheel and the ice chests weighed 58.2 pounds or 26.45

kilograms.

After the marijuana was discovered, customs agents detained Salazar and read him his rights. He waived his right to remain silent and responded to questioning. Salazar told the customs agents that he was transporting the wheel and the ice chests to a man named Daniel Reyez; however, when the agents asked for Mr. Reyez's contact information, Salazar responded that he did not have contact information for Mr. Reyez and that Mr. Reyez would contact him to pick up his goods. The agents also questioned Salazar about undated logs found in the van and on Salazar's person that listed various items transported and the names of their respective recipients. The wagon wheel did not appear on the list Salazar claimed he prepared for the February 17th trip, and the only list that mentioned a wagon wheel indicated that the wheel was going to "Modesta Gonzalez." Salazar told the agents that items designated for "Modesta Gonzalez," "Pedro Perez," and "Daniel Reyez" were all for Mr. Reyez.

Salazar was indicted on March 3, 2005 in a two-count indictment for knowingly importing less than fifty

kilograms of marijuana in violation of 21 U.S.C. §§ 952 and 960 and knowingly possessing less than fifty kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury trial was held on April 20, 2005. The Government presented three witnesses, two customs agents and a special agent with Immigration and Customs Enforcement, all of whom testified to the events that occurred on February 17, 2005. The defense moved for acquittal at the close of the Government's evidence. That motion was denied. The defense then presented three of its own witnesses, Salazar's brother-in-law and two of his nephews. Salazar also testified on his own behalf. After the defense rested, it renewed its request for a judgment of acquittal. That motion was also denied. The jury found Salazar guilty on both counts and he was sentenced to thirty months' imprisonment on each count, to run concurrently, and three years' supervised release. He appeals his conviction and sentence.

II.

A.

In his first point of error, Salazar argues that the entire criminal proceeding below was void because the grand jury foreperson did not sign the indictment. Although the copy of the indictment in the record is unsigned, the record indicates that a signed copy of the indictment was sealed by the district court pursuant to the E-Government Act of 2002. We have received a signed copy of the indictment from the district court, and we are satisfied that Salazar is not entitled to relief on this ground.

## B.

In his second point of error, Salazar argues that the evidence was insufficient to establish the requisite knowledge that he was importing or possessing drugs. Salazar moved for acquittal at the close of the Government's case and at the close of the evidence. Accordingly, "we decide whether the evidence is sufficient by viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict and determining whether a rational jury could have found the essential elements of the offenses beyond

6

a reasonable doubt." *United States v. Arnold*, 467 F.3d 880, 883 (5th Cir. 2006) (internal quotation marks omitted).

Both of Salazar's offenses, importation and possession, require guilty knowledge as an element. *See United States v. Martinez-Lugo*, 411 F.3d 597, 599 & n.1 (5th Cir.), *cert. denied*, 126 S. Ct. 464 (2005). Guilty knowledge may sometimes be inferred where a defendant controls a vehicle containing contraband; however, where the contraband is concealed, additional circumstantial evidence that is suspicious in nature or that demonstrates guilty knowledge is required. *United States v. Cano-Guel*, 167 F.3d 900, 904 (5th Cir. 1999). "This requirement stems from the recognition that, in hidden compartment cases, there 'is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise.'" *Id.* at 904-05 (quoting *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990)). Evidence of nervousness, conflicting statements to law

enforcement officials, and an implausible story may all qualify as circumstantial evidence of guilty knowledge. *Martinez-Lugo*, 411 F.3d at 599.

It is undisputed that the marijuana found in the ice chests and in the wagon wheel--which were in Salazar's control as owner of the van--was concealed. Therefore, the Government had to bring forward circumstantial evidence of guilty knowledge to make its case. In support of its case, the Government presented evidence that Salazar began "fidgeting" or became "hesitant" when customs agents asked if they could drill a hole in the wagon wheel; that Salazar made inconsistent statements about the ownership of the wagon wheel; that Salazar's story about who he was delivering the wagon wheel to was implausible because he did not know how to get in touch with that person; and that Salazar had previously lied to customs agents about his cargo when trying to cross the border. Salazar argues that this evidence was insufficient to support a verdict against him because nervousness alone is not enough to support a finding of guilty knowledge; there was a plausible explanation for

8

his lie about the ownership of the wheel--he would have had to pay a fee if he had admitted the wheel belonged to a third party; and there was no other evidence demonstrating that his story was implausible or that he lied about anything else.

We find the evidence sufficient to support a finding of guilty knowledge on Salazar's part. Although we recognize that nervousness alone is not enough to support a finding of guilty knowledge, *United States v. Jones*, 185 F.3d 459, 464 (5th Cir. 1999), here we have nervousness accompanied by an inconsistent statement to law enforcement officials, a potentially implausible story about how Salazar would transfer his cargo to its recipient, and other suspicious evidence, including the questionable business practices described below. With respect to nervousness, two customs agents testified that Salazar's demeanor changed when they asked to drill a hole in the wagon wheel. According to one, Salazar began "fidgeting," and according to the other, Salazar became "hesitant." Further, Salazar initially told law enforcement officials that the wagon wheel belonged to

9

him but later changed his story and said it belonged to a friend. Salazar had no contact information for the person to whom he said he was delivering the wheel, and he admitted in open court that he had on other occasions lied to customs officials about his cargo to avoid problems at the border. We have previously noted that "unconventional" business practices may qualify as the suspicious evidence necessary to support a finding of guilty knowledge. *See United States v. Roel*, 193 Fed. App'x 309, 312 (5th Cir. 2006) (citing *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990)). Salazar's business practice of lying to customs officials to avoid problems at the border, in combination with his change in demeanor, his inconsistent statements to customs officials, and his potentially implausible story about how he would transfer possession of his cargo could lead a rational jury to find guilty knowledge beyond a reasonable doubt. Salazar is not entitled to relief on this ground.

## C.

Finally, in his third point of error, Salazar argues

that he was entitled to a partial acquittal regarding the drugs found inside the ice chests because he never claimed that he owned them. Although Salazar generally moved for acquittal, he did not specifically request a partial acquittal regarding the drugs in the ice chests. Accordingly, we review for plain error. *See United States v. Villasenor*, 236 F.3d 220, 222 (5th Cir. 2000). Under the plain error standard of review, "a conviction can be reversed only if there was a 'manifest miscarriage of justice,' which would occur if there is no evidence of the defendant's guilt or 'the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *Id*. (quoting *United States v. McCarty*, 36 F.3d 1349, 1358 (5th Cir. 2000)).

The trial court did not commit plain error by failing to partially acquit Salazar. As we discussed above in Part II.B, there was at least some circumstantial evidence of guilty knowledge on Salazar's part. Although much of this evidence related to the wagon wheel, we cannot say that all of it related to the wagon wheel alone. For example, Salazar's irregular business

11

practices--lying to customs agents about cargo--had nothing to do with the wagon wheel and instead support a finding of guilty knowledge in general. Accordingly, we cannot say that Salazar's conviction for the quantity of drugs found inside the ice chests gives rise to a "manifest miscarriage of justice." Salazar is not entitled to relief on this ground.

III.

For the foregoing reasons, we AFFIRM Salazar's conviction and sentence.