**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-7065

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RUBEN CASILLA, MARTHA TORRES,
and LUIS DONALD QUINTERO,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

(April 26, 1994)

Before KING and WIENER, Circuit Judges, and ROSENTHAL, District Judge.[*]

ROSENTHAL, District Judge:

Appellants Ruben Casilla, Luis Donald Quintero, and Martha Torres were convicted for possession of cocaine with intent to distribute, importation of cocaine into the United States from Mexico, and for conspiracy to commit the underlying offenses. Appellants each contend that the evidence was insufficient to support the guilty verdicts. We AFFIRM.

_____

[*] District Judge of the Southern District of Texas, sitting by designation.

## 1. **The Legal Standards of Review**

In reviewing the sufficiency of the evidence, this court must determine whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Martinez*, 975 F.2d 159, 160-61 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1346 (1993). Reasonable inferences are construed in accordance with the jury's verdict. *Id.* at 161. The jury is solely responsible for determining the weight and credibility of the evidence; this court will not substitute its own determination of credibility for that of the jury. *Id.* The scope of appellate review is the same for both direct and circumstantial evidence. *United States v. Lorence*, 706 F.2d 512, 518 (5th Cir. 1983).

The first and third counts of the four-count indictment alleged a conspiracy to import cocaine and a conspiracy to possess cocaine with the intent to distribute.[1] To prove a conspiracy, the government must prove that: (1) an agreement existed between two or more persons to violate the law; (2) the defendant had knowledge of the agreement; and (3) the defendant voluntarily participated in the conspiracy. *United States v. Pennington*,____ F.3d ____, 1994 WL 75684, * 3 (5th Cir. Mar. 14, 1994) (pub. page ref. unavail.);

---

[1] The appellants were each charged in a four-count indictment with conspiring to import cocaine in violation of 21 U.S.C. §§ 963, 952(a), and 960(b)(1); importing cocaine into the United States in violation of 21 U.S.C. §§ 952(a) and 960(b)(1); conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); and possession with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

2

*United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992); *United States v. Chavez*, 947 F.2d 742, 744-45 (5th Cir. 1991).

Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence. *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993). An agreement may be inferred from a "concert of action." *Id.; United States v. Natel*, 812 F.2d 937, 940 (5th Cir. 1987). Once the government has produced evidence of a conspiracy, only "slight" evidence is needed to connect an individual to that conspiracy. *United States v. Duncan*, 919 F.2d 981, 991 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 2036 (1992). Knowledge of a conspiracy and voluntary participation in a conspiracy may be inferred from a "collection of circumstances." *Cardenas*, 9 F.3d at 1157. Evasive and erratic behavior may be evidence of guilty knowledge. *Id.; United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988). Presence and association with other members of a conspiracy, along with other evidence, may be relied upon to find a conspiracy. *Cardenas*, 9 F.3d at 1157.

Count two of the indictment alleged importation of cocaine. To prove importation, the government must prove that: (1) the defendant played a role in bringing a quantity of a controlled substance into the United States from outside the United States; (2) the defendant knew the substance was a controlled substance; and (3) the defendant knew the substance would enter the United States. *Cardenas*, 9 F.3d at 1158; *United States v. Ojebode*,

3

957 F.2d 1218, 1227 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1291 (1993).

Count four alleged possession of cocaine with the intent to distribute. "The essential elements of possession with intent to distribute narcotics consist of: (1) possession; (2) knowledge; and (3) an intent to distribute the drugs." *Chavez*, 947 F.2d at 745; *see also Pennington*, 1994 WL at * 3; *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1423 (5th Cir. 1989). Possession may be actual or constructive. *Cardenas*, 9 F.3d at 1158. Constructive possession is "the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance." *Molinar-Apodaca*, 889 F.2d 1423; see also *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1382 (5th Cir. 1992). Intent to distribute may be inferred from the value and quantity of the substance possessed. *United States v. Martinez-Mercado*, 888 F.2d 1484, 1491 (5th Cir. 1989).

As to the second and fourth counts, aiding and abetting is an alternative charge in every indictment. *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992). To prove aiding and abetting in a criminal venture, the prosecution must prove that the defendant: (1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by action to make the venture succeed. *See United States v. Mergerson*, 4 F.3d 337, 342 (5th Cir.), *cert. denied*, 1993 WL 558090 (1994); *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992). The evidence supporting a conspiracy conviction typically supports an aiding and abetting

4

conviction. *Mergerson*, 4 F.3d at 342; *United States v. Chavez*, 947 F.2d 742, 746 (5th Cir. 1991).

Each appellant contends that the evidence was insufficient to show knowledge of the cocaine.

2. **The Evidence Presented**

On August 11, 1992, at approximately 5:00 a.m., a van crossed the International Bridge to enter the United States in Brownsville, Texas. Casilla was driving; Torres sat in the passenger seat; and Quintero was in the rear. The van was referred to a secondary inspection station, where United States Customs Service Officer James Lette was on duty.

Officer Lette testified at trial that the slip referring the van to the secondary inspection station reflected that Casilla had stated that he was from Dallas and had gone to Matamoros for a few drinks. When Officer Lette asked Casilla where he was from, Casilla started to say "Louisiana," then caught himself and said "Dallas." Casilla told Officer Lette that he had not been to the interior of Mexico.

Because of Casilla's hesitant and inconsistent answers, Officer Lette asked Casilla to remove the baggage and food products from the van for further inspection. When Officer Lette asked Casilla for his driver's license, Casilla produced a Massachusetts license. When Officer Lette checked the interior of the van to ensure that everything had been removed for inspection, he discovered a Guatemalan coin and several beverage containers, including one with a label from the interior of Mexico. Officer

5

Lette also found several bags of coffee in the rear of the van. While in the van, Officer Lette noticed that the floorboard behind the front seats was raised to an unusual height.

Lette testified that a number of documents were also found in the van. They included Quintero's passport, bearing a stamp from the Consul General for the Republic of Ecuador in New York dated July 14, 1992, and a stamp from the Consul General for the Republic of Guatemala in New York dated July 16, 1992; Torres's passport, with a stamp from the Consul General for the Republic of Guatemala in New York, dated July 15, 1992; Casilla's passport, with a stamp from the Consul General for the Republic of Guatemala in New York dated July 14, 1992; a Special Power granting Casilla authority to take the van to Central America, dated July 21, 1992; a document giving Quintero authority to take the van through Mexico for thirty days; and a temporary import permit for the van from the Mexican government.

Officer Lette continued his inspection with United States Custom Inspector Neal Ramsey, who also testified at trial. When Inspector Ramsey approached the scene, he noticed that the appellants appeared anxious; were talking among themselves; were not watching the search; and, unlike most individuals, displayed no anger or impatience while the van was being dismantled.

Lette and Ramsey agreed that they needed to "vent" the area where the floor of the van was raised. After attempting to punch a hole in the floor, Lette and Ramsey drilled a hole in the floor. Lette observed that Torres had a "frightened look" on her

face during the drilling. The drilling revealed a hidden compartment containing 63.1 kilograms of cocaine bricks, wrapped in plastic and packed in coffee grounds. The appellants were then arrested.

United States Customs Service Special Agent Ramona Bauer interviewed the appellants and testified at trial in the government's case-in-chief. Agent Bauer introduced herself to each appellant, informed each appellant that cocaine had been found in the van, and administered *Miranda* warnings to each appellant.

Agent Bauer testified that Casilla waived his *Miranda* rights and stated that he had borrowed the van from a friend in Dallas. When asked the name of the Dallas friend, Casilla refused to answer and requested a lawyer. Agent Bauer then terminated the interview.

Torres also waived her *Miranda* rights. In response to Bauer's questions, Torres said that she and Casilla were friends and that she was going to "baptize Mr. Quintero's baby girl in New York." Torres also said that the appellants were going to California and Texas. They had driven the van from New York to Dallas, where Torres stayed in an apartment with Quintero and a female friend of his for several days. The appellants then drove from Dallas to Brownsville; from there to Vera Cruz; and then on to Guatemala. During the interview, Torres became agitated and Agent Bauer terminated the interview.

Quintero also waived his *Miranda* rights and told Agent Bauer a different story than either Casilla or Torres had related.

7

Quintero claimed that he began his trip in New York with another person whose name he could not remember, travelled to Houston with that person, then went to Brownsville, Texas with a different person, whose name Quintero also could not remember. Quintero claimed to have met two other people in Brownsville and to have travelled with these two individuals to Vera Cruz. Quintero told Agent Bauer that he went from Vera Cruz to Guatemala by himself, stayed for approximately one week, happened to meet the people with whom he had travelled to Vera Cruz, and arranged to return with them to the United States.

The day after his interview, Quintero called Agent Bauer and said that he needed to speak with her immediately. Quintero told Bauer that he was afraid for his wife in New York and that he had not told the truth the day before. Quintero told Agent Bauer that another van was travelling with the group and that this other van was also "loaded." Agent Bauer advised Quintero to talk to his lawyer and terminated the interview.

Casilla was the only defense witness to testify at trial. Casilla testified that he was approached by Torres and asked whether he was willing to drive Torres' friend, Roberto Cruz, and his family, on a vacation to California. Casilla testified that he was offered $4,000 for serving as a chauffeur, despite the fact that his driver's license had expired in 1989. Casilla testified that he was told to drive to Houston. He did not know that Texas was in the southern part of the United States and that California was in the western part of the United States, even though he had

8

completed a tenth grade education in New York. Casilla testified that he drove to North Carolina and on to Texas. When asked by the district judge about the California destination, Casilla said that he just did what he was told. Casilla claimed that he did not know that they would be going to Guatemala until they reached Mexico.

Casilla testified that a group of 12 to 15 vans and cars formed a caravan in Mexico and travelled to Guatemala. In Guatemala, a person named "Douglas" took the van to get the speedometer fixed and to change the oil. Douglas returned it a few days later, in the same condition, except for the repairs. Casilla testified that Cruz and his family left Guatemala a few days before appellants started the trip back to the United States. Casilla generally denied making any of the statements recounted by the government officers and agents.

After the government rested, each appellant requested a judgment of acquittal. The district court denied Casilla's and Quintero's motions and deferred ruling on Torres's motion. At the close of all the evidence, each appellant renewed the motions for judgment of acquittal. The district court again denied Casilla's and Quintero's motions and deferred ruling on Torres's motion. The jury returned a guilty verdict against each appellant on each count of the indictment. Each appellant claims that there was insufficient evidence that they knew of the cocaine to sustain the guilty verdicts.

9

### 3. The Sufficiency of the Evidence

#### a. The Evidence to be Considered

Initially, this court must determine whether it can examine all the evidence or only that evidence presented during the government's case-in-chief. Because Casilla testified in his own behalf after the district court denied his motion for acquittal, this court may consider the evidence that Casilla presented during his case-in-chief, as well as in the government's case-in-chief. *See, e.g., United States v. Brechtel*, 997 F.2d 1108, 1115 n.31 (5th Cir.), *cert. denied*, 114 S. Ct. 605 (1993); *United States v. Cardenas-Alvarado*, 806 F.2d 566, 570 n.2 (5th Cir.), *cert. denied*, 107 S. Ct. 269 (1986).

Because Quintero did not present any evidence after the district court denied his motion for judgment of acquittal, this court may only examine the evidence introduced during the government's case-in-chief. *See, e.g., United States v. Belt*, 574 F.2d 1234, 1236-37 (5th Cir. 1978); *United States v. Thomas*, 987 F.2d 697, 702 (11th Cir. 1993).

The sufficiency of the evidence against Torres must also be determined solely from the evidence presented in the government's case-in-chief. As this court has previously stated:

> [I]f the trial court erroneously defers ruling on the motion for acquittal and the defendant presents evidence, the appellate court in reviewing the sufficiency of the evidence will only consider the evidence presented in the government's case-in-chief . . . . Even though this limited review has the effect of undermining the waiver rule by excluding from appellate review all evidence presented by the defendant, application of any other rule would penalize a defendant for a trial court's refusal to

10

> issue a ruling at the time clearly required by our previous cases.

*United States v. Rhodes*, 631 F.2d 34, 44-45 (5th Cir. 1980), *cert. denied*, 101 S. Ct. 3007 (1981).

### b. Sufficient Evidence Supporting the Convictions

Appellants challenge the sufficiency of the evidence that they knew that there was cocaine hidden in the van.  This court has recognized that "a less than credible explanation" may be part of the overall circumstantial evidence upon which the jury can infer guilty knowledge.  *United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir. 1993), *cert denied*, 114 S. Ct. 1230 (1994); *United States v. Arzola-Amaya*, 867 F.2d 1504, 1512 (5th Cir.), *cert. denied*, 110 S. Ct. 322 (1989); *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988).  The appellants told less than credible stories to account for their presence in the van transporting the cocaine.  The jury was also presented with inconsistencies in the stories provided to federal officials and, in Casilla's case, during the trial.  Such inconsistencies are well-recognized circumstantial evidence of guilty knowledge.  *United States v. Diaz-Carrear*, 915 F.2d 951, 954 (5th Cir. 1990); *United States v. McDonald*, 905 F.2d 871, 874 (5th Cir.), *cert. denied*, 111 S. Ct. 566 (1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1491 (5th Cir. 1989).  The jury was entitled to reject the explanations of the appellants' involvement in, and knowledge about, the trip to and from Guatemala.  *See Roberson*, 6 F.3d at 1093; *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991).

11

Casilla offered an implausible explanation that he was hired as a chauffeur who lacked a driver's license for a trip to California by way of Texas, Mexico, and Guatemala. His trial testimony was also inconsistent with the varying stories that he had earlier told the customs agents, which were in turn contradicted by the physical evidence found in the van, including the passports, the travel documents, and the items from the interior of Mexico and Central America. The jury could reasonably conclude that Casilla had knowledge of the purpose of the trip and of the cocaine in the van.

The evidence introduced during the government's case-in-chief as to Quintero presented an implausible story that was also inconsistent. During his first interview with Agent Bauer, Quintero recounted trips with people he could not name, for purposes he could not remember. After Quintero's first interview with Agent Bauer, when he told an implausible story about how he met the other appellants, Quintero called Agent Bauer's office, asked for another interview, and changed his story. The inconsistencies between Quintero's stories, and his inculpatory statements during the second interview, could be used by the jury to infer Quintero's knowledge of the cocaine. Quintero's inability to remember the names of the people with whom he travelled and the implausibility of the story he told also support a finding that Quintero knew about the cocaine.

The government also presented evidence in its case-in-chief as to Torres that was sufficient to support a jury finding of

guilty knowledge. Agent Bauer testified about Torres's statement that she had spent two or three days in Dallas with Quintero and his friend. Neither Casilla nor Quintero had told Agent Bauer that they had spent any time in Dallas. In fact, Quintero had told Agent Bauer that he did not meet either Casilla or Torres until he arrived in Brownsville, Texas.

Torres told Agent Bauer that she had travelled from New York with only one other person, Casilla. However, the government presented evidence that Roberto V. Cruz received a speeding ticket in South Carolina for driving the van during the trip from New York to Texas. In addition, photographs developed from film in Torres's camera and from other film found in the van that showed a number of people in and around the van and with Torres were introduced into evidence. The jury could reasonably conclude from these photographs and from the other evidence that Torres travelled with more than one other person. The jury could rely on the inconsistencies in Torres's story to the government witnesses, and the physical evidence contradicting her story, such as her passport stamped for entry to Mexico and Central America, to find Torres's statements implausible and indicative of her knowledge of the cocaine.[2]

---

[2] The government argues that Torres waived her appeal of the district court's refusal to grant her Rule 29 motion because Torres did not mention the Rule 29 motions for acquittal in her brief as the basis of appeal. This court has held that an appellant's brief must be interpreted liberally to identify the issues on appeal. *Carmon v. Lubrizol Corp.*, ____ F.3d _____, 1994 WL 81744, *2 (5th Cir. Mar. 31, 1994) (pub. page ref. unavail.); *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 504 (5th Cir. 1981). In light of the court's ruling, the court does not reach the

This court has held that nervous behavior may be considered as circumstantial evidence of guilty knowledge. *McDonald*, 905 F.2d at 874. In this case, all the appellants were nervous during the inspection of the van. Inspector Ramsey testified that unlike most people he had observed during similar searches, the appellants did not watch the extensive search of their vehicle and did not show anger or impatience when the officers began dismantling the van interior. Inspector Ramsey testified that when the officers began focusing their attention on the compartment in which the cocaine was stored, Torres watched intently; when the officers broke into the compartment, Torres turned away with a frightened look on her face. The jury could infer the appellants' knowledge of the contents of the compartment from their behavior at the inspection area.

This court has recognized that a long trip and a close relationship between the defendants may be part of the overall circumstantial evidence. *McDonald*, 905 F.2d at 874; *United States v. Williams-Hendricks*, 805 F.2d 496, 503 (5th Cir. 1986). Agent Bauer testified that Torres had described Casilla as a good friend and had stated that Torres was going to baptize Quintero's baby girl in New York. Casilla also testified that he considered Torres "family."

Officer Lette also testified that an average person would have realized that the flooring in the van had been altered because it was raised over four inches and the back seats were above the

waiver issue.

top of the front seats, stadium-style. *See, e.g., United States v. Olivier-Becerril*, 861 F.2d 424, 427 (5th Cir. 1988).  The jury could reasonably rely on this evidence to infer knowledge of the cocaine's existence.

Appellants cite *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381-83 (5th Cir. 1992), in which this court held that evidence of inconsistent statements to a checkpoint inspector, a nervous demeanor, and an implausible explanation was insufficient to show knowledge of the presence of cocaine.  The present case involves facts and events that are both stronger and more numerous evidence of guilty knowledge than were before the court in *Rosas-Fuentes*.  The two cases relied upon in the *Rosas-Fuentes* opinion, and by appellants in this case, are "mere presence" cases, in which the only evidence the government presented was that the defendants were around other people involved in the conspiracy. *United States v. Cardea Carrasco*, 830 F.2d 41 (5th Cir. 1987); *United States v. Jackson*, 700 F.2d 181 (5th Cir.), *cert. denied*, 104 S. Ct. 139 (1983). The evidence here goes well beyond "mere presence." Appellants in essence ask this court to read *Rosas-Fuentes* so broadly as to hold that circumstantial evidence cannot support a finding of guilty knowledge.  Such a reading is not justified by the case and is inconsistent with the clear law of this circuit.

Having examined all the evidence, in the light of our properly restricted standard of review, this court concludes that a rational jury could find the appellants guilty beyond a

15

reasonable doubt.  This court therefore AFFIRMS the convictions on all counts.