IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-41343

_____


UNITED STATES OF AMERICA ,

                                        Plaintiff – Appellee,

        v.

ALBERTO JOEL TORRES; NORBERTO AGREDANO,

                                        Defendants – Appellants.


-------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. L-00-CR-564-1
-------------------------------------------------------------
March 15, 2002


Before HIGGINBOTHAM, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Appellants Alberto Joel Torres ("Torres") and Norberto Agredano ("Agredano") were convicted after a jury trial of possession with intent to distribute and conspiracy to possess with the intent to distribute cocaine and sentenced, respectively, to 188 and 210 month terms of imprisonment.  Both appeal, contending that insufficient evidence of their guilt was offered at trial.

_____

        [*]    Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**BACKGROUND**

Close to midnight on April 26, 2000, Laredo police officer Arturo Vela ("Vela") was on patrol when a fellow officer was dispatched to an intersection near the banks of the Rio Grande based on a report of suspicious activity, i.e., that unidentified individuals were loading bundles into a white Nissan Maxima.

Vela decided to proceed to the location, and while en route, spotted a white Maxima, which appeared to be heavily loaded, traveling away from the reported location. After observing the Maxima commit two traffic infractions, Vela activated his vehicle's flashing lights and attempted to pull the Maxima over. The driver of the Maxima did not stop, however, and continued driving at normal speed for approximately five blocks before pulling into the driveway of a residence located at 1911 Santa Rita Street, a location approximately one-half mile from where the Maxima was loaded.

As Vela exited his patrol car, the driver of the Maxima, later identified as Ezequiel Villarreal ("Villarreal"), also exited. Shortly thereafter, two other men, later identified as Torres and Agredano, exited the Maxima. Their exit was somewhat unusual because both individuals exited through the right, front passenger door of the four-door vehicle.[1] Both then walked towards the residence and waited in front of it. It was later determined that Agredano and Villarreal both lived in the 1911 Santa Rita Street residence.

At approximately the same time, officer Christi Hinojosa ("Hinojosa") arrived at the scene. Vela asked her to make contact with Torres and Agredano. As she approached the fence to the

---

[1]The Maxima has only two bucket seats in the front.

2

property, she observed Torres washing his hands under an outside water spigot. Speaking Spanish, she told both men to "come over here," at which point both men turned and ran.

Hinojosa radioed to the dispatcher and requested that other officers be sent to the area to set up a perimeter. Additional officers subsequently arrived and aided in the search for Agredano and Torres. Agredano was found by officers hiding near the rear of the 1911 Santa Rita residence. Torres was found hiding between a junked vehicle and a fence line a few blocks away. Torres was crouched in a squatting position; he was sweating, out of breath and very nervous. Despite being found in a squatting position, he claimed to be relieving himself. He stated that he was afraid because he was an illegal alien. Both Agredano and Torres were returned to the 1911 Santa Rita residence and Vela identified them as the individuals who exited the Maxima.

While the search for Agredano and Torres was taking place, Vela approached the Maxima and noticed some large bundles that filled the entire back seat of the vehicle. Vela subsequently requested a drug-sniffing dog. When the dog alerted to the vehicle, Vela entered the vehicle and removed the bundles. After inspection and testing, it was determined that the bundles were duffle-bags wrapped in black tape, containing 722 pounds of 75% pure cocaine in individual bricks with an estimated value of over six million dollars. The wrapped duffle bags were too heavy for one person to lift.

An inventory search of the vehicle was later conducted. That search yielded a "fanny pack," containing a cell phone, a firearm magazine containing live ammunition and a wallet. The wallet contained a Mexican driver's license issued to Torres.

At trial, Yolanda Flores, a friend of the Villarreal family, testified that she visited the 1911 Santa Rita residence on April 26, 2000 and that when she left at 10:45 p.m. Agredano was

outside drinking with Hector. Julio Villarreal, Agredano's grandfather, testified that he returned from walking Yolanda Flores home at approximately 11:00 p.m. and saw that Hector and Agredano were still outside. He further testified that he was in his bedroom at the 1911 Santa Rita residence on April 26, 2000 from 11:00 p.m. until the police arrived, and that, though he could not see them, he heard Hector and Agredano talking outside his window during this period.

**ANALYSIS**

We review the denial of a properly made Rule 29 motion for sufficiency of the evidence.[2]

> "In assessing these challenges, this court must view the evidence in the light most favorable to the jury verdict and affirm if a rational trier of fact could find that the government proved all essential elements beyond a reasonable doubt. We consider the countervailing evidence as well as the evidence that supports the verdict. It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. The jury is free to choose among reasonable constructions of the evidence. If, however, the evidence, viewed in the light most favorable to the government, gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed.

United States v. Richards, 204 F.3d 177, 206 (5th Cir. 2000) (citations omitted).

Because Torres did not put on any evidence, as to Torres this court considers only the evidence offered in the Government's case-in-chief. United States v. Casilla, 20 F.3d 600, 605-06 (5th Cir. 1994). In contrast, because Agredano did put on evidence, to wit, the testimony of Yolanda Flores and Julio Villarreal, our review of his conviction involves consideration of that testimony as well. Id.

To obtain a conviction for aiding and abetting the possession of cocaine with intent to

---

[2]The parties dispute the standard of review to be applied to the review of Agredano's conviction. The United States contends we should review for plain error, Agredano contends we should apply the sufficiency standard. Because the result is the same under either standard, we need not resolve this dispute.

4

distribute, the government was required to prove "that the elements of the substantive offense[3] occurred and that [Torres and Agredano] associated with the criminal venture, purposefully participated in the criminal activity, and sought by [their] actions to make the venture succeed. Associate means that the defendant shares in the principal's criminal intent. Participate means that the defendant engages in some affirmative conduct designed to aid the venture or assists the perpetrator of the crime." United States v. Garcia, 242 F.3d 593, 596 (5th Cir. 2001) (citations omitted).

In order to obtain a conviction for conspiracy to possess cocaine with intent to distribute, the government was required to prove "(1) the existence of an agreement between two or more persons to violate federal narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." United States v. DeLeon, 247 F.3d 593, 596 (5th Cir. 2001).

Because of the similarity of the conspiracy and the "aiding and abetting" elements, the evidence supporting the two will often be the same. United States v. Delgado, 256 F.3d 264, 274-75 (5th Cir. 2001).

Both defendants contend that their mere presence at the scene of the arrest was insufficient to support conviction on either count, in part because they contend that no reasonable jury could have concluded that they were one of the passengers in the Maxima.

---

[3]In order to obtain a conviction for possession of cocaine with intent to distribute, the Government was required to prove: (1) knowing (2) possession of cocaine (3) with intent to distribute it. United States v. Delgado, 256 F.3d 264, 274 (5th Cir. 2001). The appellants do not contend that the Government failed to prove the substantive possession offense. The amount of the drugs in the car and the fact that they filled the entire back seat alone is sufficient to support a finding on all three elements as to at least one of the occupants of the vehicle.

As an initial matter, while the defendants are correct that establishing their presence in the Maxima was an indispensable part of the Government's case, there was overwhelming evidence supporting it. Vela testified that Agredano and Torres were the two men who exited the Maxima after Villarreal. Hinojosa testified that Agredano and Torres were the two men who fled from the 1911 Santa Rita residence. Finally, Agredano and Torres were both found hiding at midnight very near the scene. The purported inconsistencies in the trial evidence that the defendants mention in their briefs provide no basis to disturb the jury verdict. United States v. Garza, 990 F.2d 171, 175 (5th Cir. 1993) ("The jury is the ultimate arbiter of witnesses' credibility and is free to choose among reasonable constructions of evidence.").

Next, while Agredano and Torres are also correct that proof of their mere presence at the scene was insufficient to support the convictions, United States v. Dean, 59 F.3d 1479, 1486 (5th Cir. 1995) ("Mere presence and association alone cannot support a conspiracy conviction."), they were more than merely present.

The evidence demonstrated, or allowed the jury to reasonably conclude, that Villareal and Torres picked up Agredano at nearly midnight shortly before picking up 6 million dollars of cocaine a half mile away, cocaine wrapped in bundles too heavy for one man to carry.[4] After loading the drugs, the three men stuffed themselves into a compact car with a backseat full of 722 pounds cocaine. Upon arriving at Villareal and Agredano's residence chased by the police, Torres and Agredano left the car together and Torres immediately found a water spigot, presumably to

_____

[4]See United States v. Martinez-Moncivais, 14 F.3d 1030, 1035 (5th Cir. 1994)("[I]t is reasonable for a jury to conclude that in the course of transporting millions of dollars of readily marketable [cocaine] through channels that should lack the protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders.") (citations omitted).

6

wash the cocaine residue off his hands. When approached by the police the men fled. United

States v. Lopez, 979 F.2d 1024, 1030 (5th Cir. 1992). These facts constitute more than mere

presence.

## CONCLUSION

In light of the foregoing discussion, the convictions of Agredano and Torres are hereby

AFFIRMED.