REVISED MARCH 26, 2010
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 25, 2010

Charles R. Fulbruge III
Clerk

No. 09-30320

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARLOW DEWAYNE ASHLEY

Defendant - Appellant

Appeal from the United States District Court for the Western District of
Louisiana, Shreveport Division
08-CR-00302-01

Before DAVIS, WIENER, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In this appeal, we consider several issues raised by Marlow Ashley who was convicted of drug trafficking offenses. For the following reasons, we AFFIRM Ashley's conviction.

I.

On September 30, 2008, the defendant Marlow Ashley and a female companion Markiya Atkins approached Roberta Figueroa, a ticket agent at the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Kerrville bus station in Humble, Texas to purchase a bus ticket. Atkins presented Figueroa with a driver's license and paid cash for a one-way bus ticket to Shreveport, Louisiana. Atkins then requested a baggage check claim form for one bag. On the claim form, Figueroa handwrote the place of origin and the destination of the bag. Figueroa noticed that when the bus arrived, Ashley, and not the ticket-holder Atkins, boarded the bus. At trial, Figueroa testified that the ticket and baggage check issued to Atkins were the only ones issued to passengers in Humble destined for Shreveport that day and that, aside from Ashley, no one else boarded the bus from Humble to Shreveport. After the bus departed, Figueroa exited the bus station to take a break and noticed Atkins sitting in her car.

In Shreveport, police officers received confidential information from the Houston Police Department that two people involved in drug trafficking were on their way from Humble to the Shreveport bus station. The confidential information described the appearance and clothing of the male on the bus and the model, color, and license plate of the car driven by the female. Several Shreveport plain-clothes officers arrived at the Shreveport terminal one half hour before the bus was scheduled to arrive. Soon after their arrival, officers noticed a car matching the description given by the confidential informant, parking on a street next to the bus station. When the bus arrived, five or six passengers disembarked but only one of the passengers, Ashley, matched the description given to law enforcement. Officers testified that upon alighting from the bus, Ashley appeared nervous, frantically making calls and text messaging on his cell phone. Without approaching the checked luggage removed from the bus, Ashley exited the bus station and began walking down the street.

Only a cardboard box and a black roller bag were removed from the bus's cargo hold. The officers brought in a drug dog which made a positive alert to the black roller bag. On the outside of the bag, a baggage claim check read "To

Shreveport, Louisiana from Humble, Texas via Humble, Texas."[1] When it became evident that no one would claim the luggage, officers opened the black bag and discovered 225 grams of crack cocaine and 28.3 grams of powder cocaine wrapped in dryer sheets and electrical tape.

Officers located Ashley walking down the street next to the bus station; they detained him, read him his rights, and searched him. Ashley had no identification or luggage claim ticket, and when asked, denied knowing Atkins. Officers then asked if they could look at Ashley's cell phone and he agreed. On the cell phone, officers found numerous text messages between Atkins and Ashley exchanged during the time Atkins had been on the bus. These text messages indicated that Ashley was expecting Atkins to pick him up in Shreveport. A call history on Ashley's cell phone also revealed that Ashley had placed several calls to Atkins' phone upon his arrival at the bus station.

Though there seems to be conflicting testimony about when officers began observing Atkins at the bus station, it appears undisputed that officers observed Atkins enter the bus station and plug her cell phone into an electrical outlet to recharge it. When officers approached Atkins, she refused to identify herself and denied having driven to the bus station. She also denied knowing Ashley but allowed officers to view her cell phone on which they retrieved the same text messages that Ashley had sent from the cell phone in his possession.

After a trial, Ashley was convicted of two counts of conspiracy to distribute and possess with intent to distribute crack and powder cocaine He was also convicted of two substantive offenses of possession with intent to distribute crack and powder cocaine. See 21 U.S.C. §§ 841(a)(1) and 846.

Ashley timely appealed. On appeal, he raises three issues which we now address in turn.

---

[1] At trial, Figueroa testified that the information on the baggage claim check was written in her handwriting.

## II.

## A.

Ashley first challenges the sufficiency of the evidence to support his conviction. When a defendant preserves his challenge to the sufficiency of the evidence, this court reviews the evidence as a whole in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ekanem 555 F.3d 172, 174 (5th Cir. 2009).

The Government maintains that because Ashley neither moved for a judgment of acquittal at the close of his case nor filed a written motion for judgment of acquittal within the seven-day period after judgment allowed by FED. R. CRIM. P. 29(c), this court must address Ashley's sufficiency of the evidence claim under plain error review. Ashley argues that despite his failure to move for judgment of acquittal at the close of his case, he nonetheless preserved his sufficiency of the evidence argument on appeal. Ashley asserts that he did move for a judgment of acquittal at the close of the Government's case-in-chief, and since his case-in-chief consisted of only one witness, his motion for acquittal at the close of all the evidence would have been an empty ritual. As such, he contends, he preserved his sufficiency of evidence argument for appeal. See e.g. United States v. Pennington, 20 F.3d 593, 597 n.2 (5th Cir 1994).

However, we need not resolve whether Ashley preserved this issue for appeal, since even if we assume that his argument was properly preserved and we apply the usual standard of review, we find the evidence sufficient to support Ashley's conviction.

## B.

To prove a conspiracy pursuant to 21 U.S.C. §§ 841 and 846, the Government must present evidence that: (1) an agreement existed between two or more persons to violate the narcotics law; (2) the defendant had knowledge of

the agreement; and (3) the defendant voluntarily participated in the conspiracy. United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994). An agreement may be inferred from a "concert of action." Id. Knowledge of a conspiracy and voluntary participation in a conspiracy may be inferred from a collection of circumstances. Id. (citing United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir. 1993)). To prove that a defendant possessed the drugs with intent to distribute, the Government must present evidence that: (1) the defendant possessed the drugs either constructively or actually; (2) the defendant had knowledge of the drugs; and (3) the defendant intended to distribute the drugs. Casilla, 20 F. 3d 603. Constructive possession may be proved by any showing that the defendant exercised ownership, dominion, or control of the drugs or of the premises in which they are found. Id. Possession may be actual or constructive and may be proved by either direct or circumstantial evidence. United States v. Rosas-Fuentas, 970 F.2d 1379, 1382 (5th Cir. 1992).

With respect to the conspiracy count, the behavior exhibited by Ashley and Atkins indicates the presence of an agreement and action in concert to accomplish the agreement. Atkins bought the bus ticket using her identification and sought the baggage claim ticket for one bag. Ashley then rode the bus using Atkins' ticket while Atkins followed the bus in her car. Throughout the journey, Ashley kept in constant contact with Atkins. Text messages exchanged between the two after the bus arrived in Shreveport showed that Ashley expected Atkins to pick him up at the station. Additionally, the discovery that the only bag placed on the bus in Humble contained drugs was particularly damaging. Finally, the denials by both Ashley and Atkins reflect their guilty knowledge that they acted together to violate narcotics law.

With respect to the possession count, Ashley argues that his conviction was based on an attenuated set of inferences drawn from a series of unconnected circumstances. But circumstances may, by their number and joint operation,

be sufficient to constitute sufficient proof to show knowledge of the presence of drugs. United States v. Davis, 993 F.2d 62, 66 (5th Cir. 1993). Despite Ashley's attempt to remove all personal association with the bag in which the drugs were found, testimony at trial supports a finding that Ashley knowingly possessed the drugs with the intent to distribute them. Only one bus ticket was sold for Shreveport from Humble the day of Ashley's arrest and only one baggage claim ticket–on which Figueroa handwrote the bag's city of origin and destination–was issued. Figueroa personally observed Ashley enter the bus and testified that Ashley was the only passenger from Humble to board the Shreveport bound bus on that day. Finally, the bag in which the drugs were found had a claim check written in Figueroa's handwriting. As noted above, Ashley's behavior indicated guilty knowledge of the contents of the bag; additionally, Ashley's prior conviction for transporting drugs under circumstances very similar to those in this case, and the quantity of the drugs found in the bag were probative of intent and modus operandi. See United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989) (intent to distribute may be inferred from the value and quantity of the substance possessed).

Therefore, when viewed in the light most favorable to the verdict, a rational trier of fact could have easily found the elements of both conspiracy and possession with intent to distribute illegal drugs beyond a reasonable doubt.

## III.

Ashley argues next that the district court erred in denying him the ability to try on the clothes, in the presence of the jury, from the bag in which the drugs were found and, second, that in doing so the district court's error deprived Ashley of his Sixth Amendment right to put on evidence in his own defense.

After presenting its only witness, counsel for Ashley sought permission to have Ashley try on the clothes before the jury in order to show that the clothes

in the bag were not his. The district judge denied defense counsel's request, holding that whether the clothing fit Ashley was irrelevant.

A district court's ruling either admitting or excluding evidence is reviewed on appeal for abuse of discretion. United States v. Hicks, 389 F.3d 514, 522 (5th Cir. 2004). The Supreme Court in United States v. Abel, recognized

> A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .

469 U.S. 45, 54 (1984).

The district court reasoned that proof that the clothes in the bag did not fit Ashley had so little probative value it was not relevant. We agree that the evidence had little, if any, probative value. We need not decide, however, whether the judge erred in refusing Ashley's request because, even if this were error, it was harmless error. The district court allowed Ashley to argue that the clothes in the bag did not fit him. The record shows that counsel for Ashley questioned the arresting officer about the size of the clothes in the bag and whether the officer thought the clothes might fit Ashley. Also, at closing argument, defense counsel argued that the clothes did not fit Ashley and attacked the arresting officer's failure to investigate whether the clothes fit Ashley before making the arrest.[2] Finally, the bag and all of its contents were admitted into evidence and the record indicates that the bag was sent to the jury deliberation room along with the other exhibits. Thus the jury, who saw the

---

[2] During closing argument, defense counsel stated, "Officer Townley testified that there were clothes inside the bag with the narcotics. He testified the clothes appeared to be baggie and larger, even though he wouldn't specify. They didn't bother to get Mr. Ashley's exact measurements to see if the clothes fit him or did not fit him, but it was obvious the clothes weren't exactly his size."

defendant during trial, had access to the clothes in the jury room during deliberations, and was free to examine the clothes and decide for themselves whether the clothes were probative of Ashley's innocence or guilt. Therefore, even if the district court's refusal to allow Ashley to try on the clothes was in error, it was harmless.

Ashley also argues that the district court's actions denied him the opportunity to present a defense as guaranteed by the Sixth Amendment. Whether a defendant's Sixth Amendment rights were violated is reviewed de novo. United States v. Hitt, 473 F.3d 146, 156 (5th Cir. 2006) (citation omitted). In this case, even if the district court did err in refusing Ashley's request, the error, if any, was harmless as explained above and therefore no Sixth Amendment violation occurred. See United States v. Ramos, 537 F.3d 439, 448–49 (5th Cir. 2008).

IV.

Finally, Ashley argues that the district court erred in admitting evidence of his prior arrest. At trial, the Government introduced evidence that Ashley had been previously convicted for transporting cocaine. Similar to the facts in this case, when Ashley was arrested on the earlier offense, he was traveling on a bus from Texas to Louisiana with a ticket in another person's name.

We review the district court's decision to admit evidence of prior acts under 404(b) for an abuse of discretion. United States v. Nguyen, 504 F.3d 561, 573 (5th Cir. 2007). FED. R. EVID. 404(b) provides

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the

8

court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

To determine whether evidence is admissible under 404(b), this court applies the two pronged test set out in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc). The test requires that the court first determine if the extrinsic evidence is relevant to an issue other than the defendant's character, and second, pursuant to FED. R. EVID. 403, that the court must weigh the probative value of the evidence against any unfair prejudice it may cause. Id.

With respect to the first prong under Beechum, the district court stated that it had admitted the evidence for "the limited purpose of showing Ashley's motive, intent, and knowledge." As to the second prong, the court remarked, "I recognize that this evidence is prejudicial to Ashley. However, all evidence is prejudicial to one side or the other. In this case, the prejudice to Ashley does not substantially outweigh the probative value of the extrinsic evidence." The district court further noted that it based its decision to admit evidence of Ashley's prior offense on our decision in United States v. Hernandez-Guevara, 162 F.3d 863 (5th Cir. 1998).

We are satisfied that the district court did not abuse its discretion in admitting the evidence as probative of Ashley's motive, intent, and knowledge. In this case, the Government was required to prove that Ashley intentionally participated in transporting the drugs. Ashley, however, sought to persuade the jury that he was an innocent bystander with no connection to the bag of drugs. Therefore, evidence of the prior offense in which Ashley used an identical modus operandi is relevant to show Ashley's motive, intent, and knowledge.

The second prong of Beechum requires the court to weigh the probative value of the evidence against the unfair prejudice produced by the evidence's admission. In Beechum, this court recognized that the similarity between the

9

elements of the extrinsic and charged offense may enhance the probative value of the extrinsic offense; however, the court noted, a close resemblance between the extrinsic and the charged offense can also increase the unfair prejudice to a defendant. Beechum, 582 F.2d at 913, 915 n.20.

The district court did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial effect. Also, the court's limiting instruction was helpful in preventing the jury from drawing an improper inference from the extrinsic evidence. See Hernandez-Guevara, 162 F.3d at 872 ("[The defendant's] prior misconduct lacked the hallmarks of highly prejudicial evidence. They were not violent acts, nor were they greater in magnitude than the crimes for which [the defendant] was on trial nor did they occupy more of the jury's time than the evidence of the charged offenses."); United States v. Williams, 900 F.2d 823, 827 (5th Cir. 2001) ("As long as it is clear to the jury that the extrinsic evidence . . . is presented only to show modus operandi, to prove knowledge, and intent, there is little danger that presentation of the extrinsic evidence will cause unfair prejudice.") (citations omitted).

In sum, the district court did not abuse its discretion in admitting evidence of Ashley's prior conviction.

V.

For these reasons, we affirm Ashley's conviction.

AFFIRMED.