COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GERARDO RAMIREZ-DELGADO, | § | No. 08-11-00254-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20100D01736) |
| | § | |

# **O P I N I O N**

Gerardo Ramirez-Delgado appeals his conviction of unlawful possession of marijuana in an amount of 2,000 pounds or less but more than 50 pounds. We affirm.

## **BACKGROUND**

On March 25, 2010, El Paso County Sheriff's Office (EPSO) Detectives Benjamin Perales and Raul Apodaca conducted surveillance at a warehouse on Rojas Street in El Paso. Detective Perales observed a white van back into a loading dock at the warehouse and then saw the driver exit the vehicle and walk away. Minutes later, Perales saw a black Volkswagen Jetta with two occupants drive slowly through the warehouse area and then leave. Subsequently, other members of the surveillance team advised that some subjects had entered the warehouse through the front doors.

Next, the detectives observed a Hispanic male open the bay doors to the loading dock, walk down the stairs, and open the back doors of the white van.[1] A second man, later identified as Lazaro Camacho, was seen standing at the top of the loading dock. The two men appeared to be

---

[1] At trial, Detectives Perales and Apodaca identified Appellant as the man they saw open the van.

unloading items from the van. At that time, the detectives decided to make an approach. As the detectives approached the van, their badges were exposed and Detective Perales identified himself to Appellant. Both detectives observed that Appellant had a bundle in his hand, which Appellant dropped and immediately raised his hands in the air upon seeing the detectives.[2] Detective Perales also observed a box on the ground containing several bundles. After Camacho fled from the warehouse and was later detained, Detective Perales detained Appellant by the van. After Appellant was taken into custody, he was searched and the keys to the white van were found in his front pockets. When the detectives approached the van they noticed a very strong odor of marijuana. Inside the van, Detective Perales observed a large number of bundles, which were later determined to contain marijuana. A total of 905 bundles were found at the scene, weighing a total of 1,031 pounds. At trial, Perales explained that 1,031 pounds of marijuana is a usable quantity. Based on his training and experience as a narcotics investigator, Perales testified that around March 25, 2010, the going rate of marijuana was $250 per pound. Thomas Downs, the evidence custodian with EPSO's Narcotics Task Force, took video of the warehouse before the approach was made as well as photos at the scene. Downs testified that he did not attempt to take any fingerprints off of any of the bundles found in the van.[3] The net weight of the marijuana without the packing material was 847 pounds.

The detectives searched the warehouse which was found to be empty except for some boxes, saws, scales, tape, air freshener, and small amounts of marijuana on some saws. Detective Perales testified that based on his training and experience these items indicated that the warehouse was being used as a stash house. He also testified that the saws are used to cut the bundles, the

---

[2] Detective Perales testified that he did not instruct Appellant to raise his hands and that he did not draw a weapon on Appellant. Detective Apodaca testified that neither he nor anyone else in his unit pulled a weapon on Appellant.
[3] Downs collected as evidence the marijuana found in the van.

tape is used to tape the bundles back up, the air freshener is used to mask the odor of the marijuana, and the scales are used to weigh the bundles.

Appellant testified in his defense. He told the jury that he was an auto mechanic, had a mechanic shop in Ciudad Juarez, Mexico, and when work was scarce, he would advertise for work in El Paso. He testified that on March 25, 2010, he received a call asking if he could work on a van. After an unsuccessful attempt at finding the location he was given, he waited in the parking lot at Home Depot on Rojas for the man who called him about the van. The man was dropped off at Appellant's location. The man then got in Appellant's car and they drove to where the van was located. Appellant testified that he had never met the man before.

Appellant was told that the van was not working and was full of materials because it was a carpet-cleaning business. According to Appellant, the plan was to go to the man's house to leave Appellant's car there, drive back to the warehouse in the man's truck so they could unload the van and push the van to another location where Appellant could work on it.

Appellant left his car at the man's house and they returned to the warehouse and entered through the front doors. Appellant testified that he did not have the keys to the warehouse. He stated that he opened the door to go outside to the back of the warehouse. After he was given the keys to the van, Appellant opened the back of the van with the keys. Appellant testified that the man gave him an empty box to put all the cleaning materials in. He stated that he never attempted to start the vehicle.

When Appellant opened the van, he saw that the van was full of carpets all the way to the top. He testified that he did not see any bundles in the back of the van as were depicted in the photos admitted into evidence. While he was unpacking the van, he saw a person in plain clothes approach with a gun who told him to raise his hands, which he did. Appellant testified that he was

3

not aware of the drugs in the back of the van and that he did not intend to load or unload drugs to or from the van. He stated that he would not have accepted the job if he knew he would be involved with marijuana that day.

On cross-examination, Appellant testified that he lived in Juarez and had a visa to cross the border but not a visa to work. He testified that when the detective approached him, the box into which he was packing cleaning supplies was not on the ground. He also testified that he did not notice a smell of marijuana and stated that he knew what marijuana smells like. Appellant stated that Detective Perales lied about being the detective who stopped him, that the marijuana found in the van was depicted accurately in the photos that were admitted into evidence, and that there was an odor of marijuana. He also testified that the officer who pointed the gun was not present in court.

When asked if the van started when the officers tried to run it, Appellant testified that it did not work, but that the officers stayed there until it started. He further acknowledged that the van did start.

On rebuttal, Detective Apodaca testified that no cleaning supplies were found on the scene and that he did not hide any cleaning supplies so that they could not be photographed as evidence. Based on his training and experience as a narcotics officer, Apodaca testified that it would not make sense for someone to call a stranger to help him unload a van full of marijuana. He stated that this was because they do not want to get turned into the police or they are concerned that the stranger could possibly steal the load. Apodaca explained that the consequences of losing a load due to the police being called or the load being stolen could include a severe beating or even death.

After Appellant pleaded not guilty, the jury found Appellant guilty as alleged in the indictment, and sentenced him to five years' and six months' confinement.[4] This appeal followed.

## DISCUSSION

### Legal Sufficiency

In his sole issue on appeal, Appellant contends that the evidence does not affirmatively link him to the marijuana found in the van, and therefore, is insufficient to support his conviction. Specifically he argues that the direct and circumstantial evidence is insufficient to show that Appellant exercised care, custody, control, or management of the marijuana found in the van.

### *Standard of Review*

In determining the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The standard of review is the same for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim App. 1991),

---

[4] We note that the written judgment reflects that Appellant pleaded guilty to the offense. However, this is contrary to the record. Therefore, we reform the clerical error in the written judgment to reflect that Appellant pleaded not guilty to the charged offense. *See* TEX. R. APP. P. 43.2(b).

5

*overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

**Possession and Affirmative Links**

A person commits the offense of possession of marijuana if the person knowingly or intentionally possesses a usable quantity of marijuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010). Possession is defined as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010). The State had the burden to prove beyond a reasonable doubt that the accused: (1) exercised actual care, custody, control, and management over the contraband, and (2) knew the substance he possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex. App. – El Paso 1995, pet. ref'd).

When a defendant is not in exclusive possession or control of the place where the drugs are found, an affirmative link must be found between the accused and the contraband demonstrating that the accused exercised control over it and knew of its existence and character. *See Evans*, 202 S.W.3d at 162; *Brown*, 911 S.W.2d at 747; *Menchaca*, 901 S.W.2d at 651. An "affirmative link" may be shown to exist by either direct or circumstantial evidence, and it must establish that the accused's association to the contraband was more than just fortuitous. *Evans*, 202 S.W.3d at 161; *Brown*, 911 S.W.2d at 747; *Menchaca*, 901 S.W.2d at 651. An affirmative link may be shown by the following non-exclusive factors: (1) the accused's presence when the search occurred; (2) whether the contraband was in plain view; (3) the accused's proximity to and accessibility of the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) the accused's possession of other contraband when arrested; (6) the accused's incriminating statements when arrested; (7) whether the accused attempted to flee; (8) the accused's furtive

6

gestures; (9) the odor of the contraband; (10) the presence of other contraband or drug paraphernalia; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the contraband was found in an enclosed area; (13) whether the accused was the operator of the automobile where contraband was found; (14) whether the accused was found with a large amount of cash or weapons when arrested; (15) the accused's conduct indicating a consciousness of guilt; and (16) the amount of contraband found. *See Evans,* 202 S.W.3d at 162 n.12; *Gregory v. State*, 159 S.W.3d 254, 260 (Tex.App.–Beaumont 2005, pet. ref'd); *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex.App.–Texarkana 2001, pet. ref'd); *Hurtado v. State*, 881 S.W.2d 738, 743 n.1 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd). In conducting our review, we are mindful that it is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial, that links an accused to the drugs. *Evans*, 202 S.W.3d at 162.

*Application*

Appellant argues that the independent facts and circumstances in this case do not link Appellant to the contraband found in the van. We disagree. Although Appellant points out that specific affirmative links were not present, such a notation does not negate the other established links. *See Lair v. State*, 265 S.W.3d 580, 588 (Tex. App. – Houston [1st Dist.] 2008, pet. ref'd) ("Further possible links that do not exist, however, do not negate the links that are present."). Several of the links exist here.

Appellant was present when the search of the van was conducted and the contraband was in plain view. Appellant was also in close proximity to the contraband as he opened the back of the van where the marijuana was found, was observed unloading items from the van, and was seen holding a bundle, which he dropped and immediately raised his hands in the air without being told

7

to do so by the detectives, indicating a consciousness of guilt. *See, e.g.*, *Evans*, 202 S.W.3d at 163 (finding links where appellant was present when drugs were found and drugs were within arm's reach, and in plain view); *Rice v. State*, 195 S.W.3d 876, 879-81 (Tex. App. – Dallas 2006, pet. ref'd) (finding link where appellant was present when drugs were found inside vehicle); *Gant v. State*, 116 S.W.3d 124, 131-32 (Tex. App. – Tyler 2003, pet. ref'd) (finding links where appellant possessed vehicle, was present when contraband was found, and was in close proximity to the drugs); *Watson v. State*, No. 01-97-00526-CR, 1999 WL 21470, at *5 (Tex. App. – Houston [1st Dist.] Jan. 21, 1999, no pet.) (not designated for publication) (where appellant came out of the bathroom with hands raised and lowered himself to the ground before officers asked him to do so indicated a consciousness of guilt).

Here, Appellant was found to be in possession of the keys to the van. *See Hernandez v. State*, 867 S.W.2d 900, 905 (Tex. App. – Texarkana 1993, no pet.) (affirmative link between appellant and marijuana established where appellant possessed the key to the lock on a spare tire where drugs were found); *Whitworth v. State*, 808 S.W.2d 566, 570 (Tex. App. – Austin 1991, pet. ref'd) (appellant's possession of the key to the location where marijuana was found reasonably implies his control over it). Additionally, a strong odor of marijuana was present, the marijuana was enclosed in the van, and a large amount of marijuana was found. *See, e.g.*, *Whitworth*, 808 S.W.2d at 569-70 (strong odor of marijuana found in vehicle's trunk is an affirmative link establishing requisite element of actual care, custody, control, or management of drugs); *Robinson v. State*, 174 S.W.3d 320, 327 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd) (whether contraband is found inside an enclosed space is an affirmative link and a vehicle containing the contraband is an enclosed space); *Allen v. State*, 249 S.W.3d 680, 698 (Tex. App. – Austin 2008, no pet.) (the presence of a large quantity of drugs strengthens the inference that the accused was

8

aware of the drugs); *Roberson v. State*, 80 S.W.3d 730, 740 (Tex. App. – Houston [1st Dist.] 2002, pet ref'd) (the presence of a significant amount of drugs is an affirmative link connecting the accused to the contraband). We find the logical force of all the evidence presented at trial sufficiently established a link between Appellant and the marijuana. *See Evans*, 202 S.W.3d at 162.

As the sole judge of the credibility of the witnesses, the jury was permitted to disbelieve Appellant's claims that he only accepted a job to work on a van that he was told was not working, that he was unaware the van contained marijuana, that he had no intention of loading or unloading drugs from the van, that he did not see any bundles in the back of van, that there was no smell of marijuana, and further explained that he raised his hands in the air when an officer pointed a gun at him and told him to do so. *See Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 13. Additionally, as the State notes, the jury was entitled to draw an adverse inference from the story advanced by Appellant to explain his involvement with the van in which the marijuana was found. *See Bethancourt-Rosales v. State*, 50 S.W.3d 650, 655-56 (Tex. App. – Waco 2001, pet. ref'd) (the jury was free to infer guilty knowledge from the implausibility of Appellant's story); *see also United States v. Casilla*, 20 F.3d 600, 604-06 (5th Cir. 1994) (implausible explanation by defendant about how he came to be driving a van with cocaine hidden inside was part of the circumstantial evidence from which the jury could infer the defendant had knowledge of the drugs in the van).

After reviewing the evidence in the light most favorable to the verdict, we conclude there was legally-sufficient evidence presented at trial from which a rational jury could find, beyond a reasonable doubt, that Appellant exercised care, custody, control, or management over the marijuana and knew that substance he possessed was marijuana. *See Johnson v. State*, 23 S.W.3d

9

1, 14 (Tex. Crim. App. 2000) (great deference is given to the jury on deciding the weight of the evidence and the credibility of the witnesses).   Issue One is overruled.

## CONCLUSION

The trial court's judgment is affirmed as reformed.


GUADALUPE RIVERA, Justice

January 16, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)

10